IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

R. L. MAUCH FARMS V. CAMPBELL

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

R. L. MAUCH FARMS, INC., APPELLANT,

V.

JAMES M. CAMPBELL AND NANCY L. CAMPBELL, APPELLEES.

Filed October 21, 2025.    No. A-24-916.

Appeal from the District Court for Rock County: MARK D. KOZISEK, Judge. Affirmed.

Matthew D. Furrow, of Borders & Furrow, P.C., L.L.O., for appellant.

Michael L. Sholes, of Gotschall & Sholes, P.C., L.L.O., for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

MOORE, Judge.

INTRODUCTION

R. L. Mauch Farms, Inc. (Mauch Farms), appeals from the order of the district court for Rock County, which denied its request for a permanent injunction requiring adjoining landowners, James M. Campbell and Nancy L. Campbell, to remove the portion of their storage unit building that encroached on Mauch Farms' property. For the reasons set forth herein, we affirm.

STATEMENT OF FACTS

The parties own adjoining parcels of real property located just outside of Bassett, Nebraska. Mauch Farms owns a 250-acre parcel that is mostly sub-irrigated meadow or hay ground. But a portion of Mauch Farms' parcel, immediately north of tracts owned by the Campbells and referred to by the parties as the "tree claim," is not seeded to hay and is covered primarily with trees and weeds. The Campbells own two tracts of real property located at the southwest corner of Mauch Farms' parcel; Tract 1 was purchased in 2001, and Tract 2 was purchased in 2015. The bulk of

- 1 -

Mauch Farms' property is to the north and east of the Campbells' tracts. The Campbells' tracts are separated by a 60-foot-wide strip (the access strip) of Mauch Farms' property. Nebraska Highway 20 runs east-west along the southern borders of Tract 1, Tract 2, and the access strip.

The Campbells constructed two buildings on each of their tracts. Those buildings are divided into storage units, which the Campbells rent out for income. Building A and Building B were placed on Tract 1 prior to 2015; they do not encroach on Mauch Farms' property. Building D and Building C were placed on Tract 2 in 2015 and 2021, respectively. Building C does not encroach on Mauch Farms' property, but a 2021 survey commissioned by Mauch Farms discovered that a portion of Building D extends beyond the northern border of Tract 2 and encroaches on Mauch Farms' property by a maximum of 8.5 feet in length by 20 feet in width. The Campbells deposited fill material (dirt, cement, asphalt shavings) on the north side of Building D that extends about an additional 7 feet onto Mauch Farms property, making the total area of encroachment (building plus fill material) about 20 feet wide by 15 feet long (approximately .0069 acres). The Campbells admit the encroachment. In addition to encroaching on Mauch Farms' property, Building D does not fall within the 5-foot setback variance from the northern boundary of Tract 2 that the Campbells obtained from the city of Bassett. At issue on appeal is the proper remedy, damages for the trespass or an injunction compelling removal of the encroachment.

On October 19, 2022, Mauch Farms filed a complaint in the district court setting forth several causes of action. First, Mauch Farms alleged that Building D encroached more than 8 feet onto Mauch Farms' property and that fill material north of the building also encroached. Mauch Farms alleged that these encroachments also constituted trespasses. It alleged that the Campbells engaged in additional trespasses when they removed dirt from Mauch Farms' property for their own use and when the Campbells and their customers used a portion of the access strip to access Highway 20. Mauch Farms set forth a claim for conversion based on the Campbells' alleged removal of dirt from Mauch Farms' property. Mauch Farms sought an order requiring the Campbells to remove the encroaching portion of Building D, as well as enough of the building to comply with the city's setback requirements and the encroaching fill material. Mauch Farms sought a permanent injunction prohibiting the Campbells and their customers from encroaching or trespassing on its property. Mauch Farms also sought monetary damages for its claims, costs including the cost of the 2021 survey, and attorney fees.

The Campbells filed an answer and general denial. In a subsequent amended answer, they added a counterclaim seeking a prescriptive easement for their use of the access strip.

Trial was held before the district court on October 29, 2024. The court heard testimony from a representative of Mauch Farms, James, and one of the Campbells' rental customers. The court received exhibits, including deeds, surveys, photographs, and other documents relevant to the parties' claims. In addition to the evidence recited above, the evidence relevant to this appeal is as follows.

Carol Mauch, a "major stockholder" of Mauch Farms, testified on its behalf. Her husband managed Mauch Farms prior to his death in October 2019. Carol was not aware of the encroachment until sometime in 2021, when a friend told her he thought a particular telephone pole was on Mauch Farms' property (or perhaps on the lot line). This conversation prompted Carol to check the location of the lot line. Carol testified that she "got on the GIS and looked at the

assessor's lines," which led her to discover "a building hanging over on Mauch Farms' land, as well as an approach to the building."

Carol commissioned a survey, completed on July 22, 2021, which shows the building encroachment of 8.50 feet on the northwest side of the building and 8.27 feet on the northeast side. The survey also shows that the actual length of Tract 2 was only 103.93 feet along the western boundary and 103.58 feet along the eastern boundary. Mauch Farms' attorney sent a letter to the Campbells dated October 6, 2021, notifying them of the building encroachment, and the encroachment by the fill material placed on the north side of Building D. The letter also informed the Campbells that their removal of dirt from Mauch Farms property to use as fill material around the Campbells' buildings and the use of the access strip by the Campbells and their customers were trespasses. The letter concluded with a demand that these encroachments and trespasses be abated and corrected.

As of the time of trial, Mauch Farms' entire 250-acre parcel was "still rented" out for "the hay and the after grass." Carol admitted that the encroachment had not changed the amount of rent Mauch Farms was receiving for the property.

The quitclaim deed conveying Tract 2 to the Campbells described the dimensions of the tract to be 79 feet on the north boundary, 165 feet on the east and west boundaries, and 75 feet on the south boundary, "except that portion thereof deeded to the State of Nebraska." The county assessor's records received into evidence identify the lot width as 75 feet and the lot depth as 165 feet.

James testified about the construction of Building D in 2015. Prior to construction, James commissioned only a partial survey, identifying the east and west boundaries of Tract 2 but not the north and south boundaries. James testified that he "relied upon the deed to have some merit, some value." Given his understanding at the time of the depth of Tract 2 and his plan to build a 100-foot-long building, he was primarily concerned about not encroaching on the access strip, which he knew was owned by Mauch Farms.

James testified that he was not aware that Building D encroached on Mauch Farms' property until after receiving the letter from Mauch Farms' attorney. Prior to Building D's construction, James obtained a land use permit from the city to build on Tract 2. He also requested a variance; he indicated that the setback is 5 feet from the lot line on the north, east, and west boundaries and 10 feet from the south boundary of Tract 2. The record includes a hand-drawn document, prepared by James, representing his understanding that the northern boundary of Tract 2 was 79 feet wide, the east and west boundaries were 123 feet long, and the southern boundary was 75 feet wide. The record does not show when James completed this drawing, but we note, as did the district court, that the same drawing is included as an attachment to the Campbells' May 2015 application for a land use permit. A notation on the left side of the drawing states, "Legal Description says 165 but we know to be less." A handwritten note elsewhere on the application notes that the lot size is "75x165," but states that this is "INCORRECT - DUE TO NDOR EASEMENT." There is nothing in the record to explain how James determined the 123-foot lot depth noted in the application. Nor does the record explain why Building C, constructed after Building D but prior to when James became aware of Building D's encroachment, is shorter in length than Building D and placed within the confines of Tract 2. The Campbells' March 2021

application for a land use permit prior to construction of Building C again noted the lot size as "75x165 incorrect depends on Footage taken by NDOR on last approach changed on Hiway 20."

The record does not show the actual cost of removing the encroaching portion of the building and the encroaching fill material north of the building, but James did testify about the impact of removal. He indicated that approximately 10 feet in length would have to be removed from Building D. According to James, to then level the ground and return it to grade, as requested, would likely require the Campbells to remove about 20 more feet from each building and to create a retaining wall "to keep the structure still in place." He testified that removing the encroachments would result in the loss of five storage tenants and that the Campbells did not have other available spaces to accommodate those tenants. James testified that an award of damages to Mauch Farms would be best for the Campbells, and he asked that those damages be assessed "at what the county has assessed the land."

The district court entered an order on November 18, 2024, finding that the exercise of its equitable powers to require removal of the encroachment was unwarranted. The court awarded Mauch Farms damages of $4,500 for the trespass of the building encroachment and the Campbells' placement of asphalt shavings and cement on Mauch Farms' property. The court also ordered the Campbells to reimburse Mauch Farms $1,129 for the cost of the 2021 survey of the property and ordered the Campbells to fill the hole created on Mauch Farms' property by their removal of dirt "to grade with like kind, or better soil" within 120 days. Finally, the court found in favor of the Campbells on their claim for prescriptive easement for ingress and egress over and across the access strip as identified in the record. We have set forth further details of the court's reasoning as relevant to this appeal in the analysis section below.

Mauch Farms subsequently perfected its appeal to this court.

## ASSIGNMENT OF ERROR

Mauch Farms asserts that the district court erred in failing to use its equitable powers to order removal of the encroachment.

## STANDARD OF REVIEW

An action for injunction sounds in equity. *Charter West Bank v. Riddle*, 314 Neb. 263, 989 N.W.2d 428 (2023). In an appeal of an equity action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court; provided, where the credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *PSK v. Legacy Outdoor Advertising*, 318 Neb. 1, 13 N.W.3d 81 (2024).

## ANALYSIS

As relevant to this appeal, Mauch Farms alleged an encroachment, constituting a trespass, and sought a permanent injunction as well as monetary damages. Because the Campbells admitted that Building D encroached and thus trespassed upon Mauch Farms' property, the issue at trial was whether the appropriate remedy for that trespass was the payment of damages or injunctive relief requiring removal of the encroaching portion of the building, as well as removal of whatever

additional portion of the building was necessary to comply with the city's setback requirements. The district court denied Mauch Farms' request for injunctive relief, but it awarded damages of $4,500. On appeal, Mauch Farms asserts that the court erred in failing to use its equitable powers to order removal of the encroachment. It argues that the court incorrectly balanced the equities of the case by minimizing the injury to Mauch Farms and placing undue reliance on the cost to the Campbells of removing the encroachment if ordered to do so.

Liability for trespass exists if an actor intentionally enters land in the possession of another, or causes a thing or third person to do so. *Obermiller v. Baasch*, 284 Neb. 542, 823 N.W.2d 162 (2012). When simple acts of trespass are involved, equity generally will not act. *Lambert v. Holmberg*, 271 Neb. 443, 712 N.W.2d 268 (2006). However, where the nature and frequency of trespasses are such as to prevent or threaten the substantial enjoyment of the rights of possession and property in land, an injunction will be granted. *Id.* See, *Munger v. Yeiser*, 80 Neb. 285, 114 N.W. 166 (1907) (if trespass to property is single act and temporary in nature and effects, so that legal remedy of action at law for damages is adequate, equity will not interfere). An injunction is an extraordinary remedy, and it ordinarily should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *County of Cedar v. Thelen*, 305 Neb. 351, 940 N.W.2d 521 (2020). An adequate remedy at law means a remedy which is plain and complete and as practical and efficient to the ends of justice and its prompt administration as the remedy in equity. *Id.*

Where an injury committed by one against another is continuous or is being constantly repeated, so that complainant's remedy at law requires the bringing of successive actions, that remedy is inadequate and that injury will be prevented by injunction. *Obermiller v. Baasch, supra*. In such cases, equity looks to the nature of the injury inflicted, together with the fact of its constant repetition, or continuation, rather than to the magnitude of the damage inflicted, as the ground of affording relief. *Id.* However, a continuous and repeated trespass does not automatically demand injunctive relief, because an action for injunction sounds in equity. *Lambert v. Holmberg, supra*. Equity is not a rigid concept, and its principles are not applied in a vacuum. *ConAgra Foods v. Zimmerman*, 288 Neb. 81, 846 N.W.2d 223 (2014). Equity is determined on a case-by-case basis when justice and fairness so require. *Id.* Injunction may be withheld when it is likely to inflict greater injury than the grievance complained of. See *Lambert v. Holmberg, supra.*

In declining to issue an injunction for removal of the encroachment in this case, the district court considered that the encroachment inflicted "the unauthorized taking of another's property." It determined, however, that the encroachment was made innocently. The court stated, "The preferred course would have been to have a complete survey in 2015 before construction commenced. For the want of spending a few dollars more we would not be here." The court stated further that the Campbells "reasonably relied upon the metes and bounds description in their deed and thought the building was well within the boundaries of Tract 2."

Next, the district court noted Mauch Farms' "considerable delay" in filing its complaint (more than 7 years after the construction of Building D). The court noted that Carol was unaware that Building D encroached on Mauch Farms' property until a friend drew her attention to the possibility. The court stated:

> One might surmise that the injury inflicted was not substantial due to the lapse of time from
> the initial infliction of the injury to the time of seeking redress for the injury. If the injury

was in fact substantial it would be expected that [Mauch Farms] would have been more diligent in bringing suit.

The district court also noted the nature of Mauch Farms' property, which was not a residential or commercial lot. The court stated, "Considering the nature of [Mauch Farms'] property, 2[5]0 acres of hay meadow and 'tree claim', the size of the encroachment is not great." The court estimated the encroachment to be about "00688 acres" and stated that the "magnitude of the encroachment is minimal." The court further stated, "While not explored in any great detail, the ground taken does not appear to be hay meadow nor used for any purpose." The court noted James' testimony that the ground, at least in the access strip was "very sandy, very erodible." It also noted Carol's testimony of walking through "tall" grass when locating the 2021 survey flags. Upon the court's review of the photographic evidence in the record, the court concluded that the "'tall grass'" might also be called tall weeds growing on gravely ground. The court also noted that the photographic evidence showed a fence separating the "tree claim" from the hay meadow. The court reviewed additional evidence about the parties' uses of the properties, and it concluded that the delay between the construction of Building D and the filing of Mauch Farms' complaint indicted that Mauch Farms' use of the affected area "was infrequent and not impacted by [the Campbells'] activities." The court noted that the evidence did not indicate that the "tree claim" is used to access the hay meadow. It concluded that "[t]he injury inflicted does not appear to be great," given that the encroachment "was not shown to have interfered whatsoever" with Mauch Farms' use of the "tree claim" portion of its property.

In terms of the remedy for the encroachment, the district court considered "the removal of the building a drastic remedy in light of the harm caused," which it noted was "minimal," and it stated that granting the remedy sought by Mauch Farms would "inflict greater injury than the grievance complained of." The court stated:

> The damage to [Mauch Farms] is small and the benefit of removal of the building equally small. If [Mauch Farms'] request is granted, [it] retains the unproductive, and for the most part unused 15'x20' gravely piece of dirt, unencumbered by the encroachment and [the Campbells] must remove, at no small expense, the portion of the building and its sloping foundation. It seems that [Mauch Farms] would only receive the satisfaction of proving a point while [the Campbells] would be severely punished for their innocent mistake. The court determines that the exercise of its equitable powers requiring removal of the building is unwarranted.

The court then addressed the issue of monetary damages and awarded damages of $4,500 for the trespass of the building encroachment and the placement of fill material on the north side of Building D.

We conclude that the district court did not err in its consideration and balancing of the factors noted above.

> In determining whether an injunction should issue to compel an adjoining landowner to remove an encroachment upon property, many courts have taken the position that it is proper to consider the balance of convenience or relative hardship which would result from granting or denying the injunction. A court may decline to grant an injunction

- 6 -

to compel an adjoining landowner to remove an encroachment where the expense and difficulty of removal would be great compared to the neighbor's inconvenience in continuing the encroachment, or its removal would result in little benefit to the neighbor. Similarly, an injunction to compel an adjoining landowner to remove an encroachment may be denied if the encroachment is de minimis or is causing little damage. Other authority, however, holds that the fact that a landowner suffers little or no damage from an encroachment is an insufficient reason to deny a mandatory injunction requiring its removal.

1 Am. Jur. 2d *Adjoining Landowners* § 124 (2016). See, also, Annot., 28 A.L.R.2d 679 (1953) (addressing mandatory injunctions to compel removal of encroachments by adjoining landowner and noting similar factors); *Lambert v. Holmberg*, 271 Neb. 443, 712 N.W.2d 268 (2006) (injunction may be withheld when it is likely to inflict greater injury than grievance complained of). Here, we agree that requiring the Campbells to remove the minimal encroachment would cause greater injury than any harm to Mauch Farms in its inability to use this portion of its property.

Mauch Farms argues that the court's decision in this case "likely will result in successive trespassing suits to address [Mauch Farms'] continuing injury resulting from the encroachment" and that "[e]ventually the matter will likely progress to a claim for adverse possession," drawing the parties back into court "for costly litigation." Brief for appellant at 11. However, a continuous and repeated trespass does not automatically demand injunctive relief, because an action for injunction sounds in equity. *Lambert v. Holmberg, supra*. Mauch Farms did not include a quiet title component in its complaint, and the claims of any future lawsuits between the parties are speculative at this point.

The district court's review of the record is consistent with our own, and upon our de novo review and considering the equities of the case, we find no error in the court's refusal to grant injunctive relief.

CONCLUSION

For the reasons discussed, we affirm the judgment of the district court denying injunctive relief.

AFFIRMED.